IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LINEX TECHNOLOGIES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 11-400-GMS |
| ) | |
| HEWLETT-PACKARD COMPANY, APPLE ) | |
| COMPUTER INC., ARUBA NETWORKS, INC., ) | |
| MERU NETWORKS, INC., and RUCKUS ) | |
| WIRELESS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

### I. INTRODUCTION

On May 6, 2011, Linex Technologies, Inc. ("Linex") filed this patent infringement suit against Hewlett-Packard Company ("HP"), Apple Computer Inc. ("Apple"), Aruba Networks, Inc. ("Aruba"), Meru Networks, Inc. ("Meru"), and Ruckus Wireless, Inc. ("Ruckus") (collectively, "the defendants"). (D.I. 1.) The court stayed the action on July 7, 2011, pending the resolution of an International Trade Commission ("ITC") investigation initiated by Linex. (D.I. 20.) On August 7, 2012, the court ordered that the stay be lifted, as the ITC investigation had been finally resolved. (D.I. 28.) On October 15, 2012, the defendants filed a joint motion to transfer this action to the United States District Court for the Northern District of California. (D.I. 49.) That motion is presently before the court, and, for the reasons that follow, the court will grant the defendants' motion to transfer.

## II. BACKGROUND

Linex is a Delaware corporation with small offices in Florida, New Jersey, Massachusetts, and Texas. (D.I. 35 at ¶ 3; D.I. 77 at 7.) Apple is a California corporation with its principal place of business in Cupertino, California, which is located in the Northern District of California. (D.I. 35 at ¶ 5.) All of the other defendants are incorporated in Delaware but have their principal places of business in the Northern District of California. (D.I. 35 at ¶¶ 4, 6–8; D.I. 50 at 3–5.)

This patent infringement action involves wireless communication technologies. Linex contends that the defendants' accused products infringe one or more claims of U.S. Patent Nos. 6,757,322 and RE42,219 (together, "the asserted patents"). (D.I. 35 at ¶ 1.) Specifically, Linex claims that certain of the defendants' products operate in a "multiple input, multiple output" ("MIMO") mode and thereby infringe the asserted patents. (*Id.* at ¶ 17.) According to the defendants, the "MIMO functionality of the accused products is primarily controlled by third-party supplied chipsets," and all these third-party suppliers are located either in California or abroad. (D.I. 50 at 5.)

## III. STANDARD OF REVIEW

Under 28 U.S.C. § 1404(a), a district court has "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer."[1] *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995). The court engages in a two-step inquiry. It first determines whether the action could have been brought

---

[1] The statute provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

2

originally in the proposed transferee forum and then asks whether transfer would best serve the convenience of the parties and witnesses as well as the interests of justice. *Smart Audio Techs., LLC v. Apple, Inc.*, No. 12-134-GMS, 2012 WL 5865742, at *1 (D. Del. Nov. 16, 2012). It is the defendants' responsibility and burden to demonstrate that transfer is appropriate at each step, *Jumara*, 55 F.3d at 879–80, and, "unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail," *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).

## IV. DISCUSSION

### A. Propriety of the Transferee Forum

The court may only transfer an action to a "district or division where it might have been brought." 28 U.S.C. § 1404(a). Accordingly, the court may only grant the defendants' motion to transfer to the Northern District of California if venue would have been proper there and if that district court could have exercised personal and subject matter jurisdiction over this action. 17 James Wm. Moore et al., *Moore's Federal Practice* § 111.12[b] (3d ed. 2012).

The defendants argue—and Linex does not dispute—that this action could have been commenced in the Northern District of California. (D.I. 50 at 7–8.) Under 28 U.S.C. § 1400(b), "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." Venue therefore would have been proper in the Northern District of California, since Apple is a California corporation and all the defendants have their principal places of business in that district. Likewise, personal jurisdiction would have existed due to the defendants' presence in California, and subject matter jurisdiction would have existed

under 28 U.S.C. § 1338.[2] As such, the court finds that this action might have been brought originally in the proposed transferee forum and proceeds to the second step of the transfer analysis.

### B. *Jumara* Analysis

The court next must consider whether transfer to the Northern District of California would serve the interests of convenience and justice. In the Third Circuit, this requires an individualized analysis, accounting for the various private and public interests guarded by § 1404(a). *See Jumara*, 55 F.3d at 879. The court, rather than applying any "definitive formula," considers each of these "*Jumara* factors" on a case-by-case basis. *See id.* The private interests may include:

> plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* The public interests may include:

> the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879–80. The court addresses each of these factors in turn.

### 1. Private interest factors

#### a. Plaintiff's forum preference

---

[2] Section 1338(a) provides, in pertinent part: "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks." 28 U.S.C. § 1338(a).

4

The first private interest factor is the "plaintiff's forum preference as manifested in the original choice." *Jumara*, 55 F.3d at 879. The defendants argue that this factor should be weighed very lightly in the court's analysis, as Linex seeks to litigate outside its "home turf" and in a forum with little connection to the case. (D.I. 50 at 8–9.) Linex maintains that its forum selection is entitled to paramount consideration because a plaintiff's state of incorporation is, in fact, considered part of its "home turf." (D.I. 77 at 3–4.)

Linex is correct that a plaintiff's forum choice is generally accorded a significant amount of deference. *See Shutte*, 431 F.2d at 25 ("It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice 'should not be lightly disturbed.'"). Additionally, "the court has observed that a corporate entity's state of incorporation is part of its 'home turf.'" *Mitek Sys., Inc. v. United Servs. Auto Ass'n*, No. 12-462-GMS, 2012 WL 3777423, at *5 (D. Del. Aug. 20, 2012); *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 759 (D. Del. 2012). As such, Linex's forum selection is entitled to at least somewhat heightened deference. *See Smart Audio Techs.*, 2012 WL 5865742, at *6; *AIP Acquisition LLC v. iBasis, Inc.*, No. 12-616-GMS, 2012 WL 5199118, at *3 (D. Del. Oct. 19, 2012).

The court, however, recognizes that, when a plaintiff chooses to bring an action in a district where it is not physically located, its forum preference is entitled to something less than the paramount consideration that Linex urges. *See Smart Audio Techs.*, 2012 WL 5865742, at *6–7; *AIP Acquisition*, 2012 WL 5199118, at *3; *see also In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011) (using the term "home forum" to mean the jurisdiction in which a party physically resides and noting that "[w]hen a plaintiff brings its charges in a venue

that is not its home forum . . . that choice of forum is entitled to less deference"). Thus, the court finds that this factor weighing against transfer merits heightened but not maximum weight.

### b. Defendant's forum preference

The next private interest factor is the defendant's forum preference. *Jumara*, 55 F.3d at 879. In this case, the defendants clearly prefer to litigate in the Northern District of California, the district in which each of them are headquartered. This factor weighs in favor of transfer.

### c. Whether claims arose elsewhere

The third private interest factor has the court consider where Linex's claims arose. *Jumara*, 55 F.3d at 879. The defendants suggest that the infringement claims are more closely connected to California, as the "[d]efendant's design, development, and marketing efforts largely took place" in that state. (D.I. 83 at 5.) Linex points out that the defendants are global companies that offer or sell the accused products nationally, including in Delaware. (D.I. 77 at 5.) As such, Linex contends that at least some of the infringing activity has occurred in this district. (*Id.*)

"[A]s a matter of law, a claim for patent infringement arises wherever someone has committed acts of infringement, to wit, 'makes, uses, offers to sell, or sells any patented invention' without authority." *Cellectis S.A. v. Precision Biosciences, Inc.*, 858 F. Supp. 2d 376, 381 (D. Del. 2012) (quoting 35 U.S.C. § 271(a)). This factor is generally neutral when the defendants in a patent suit operate nationally, as the infringement can be viewed as occurring in all districts. The court, however, has recognized that infringement claims have even deeper roots in the forum where the accused products were developed. *See Smart Audio Techs.*, 2012 WL 5865742, at *7; *Wacoh Co. v. Kionix, Inc.*, 845 F. Supp. 2d 597, 602 (D. Del. 2012). Therefore,

the "design, development, and marketing" of the defendants' products in the Northern District of California leads this factor to weigh slightly in favor of transfer.

### d. Convenience of parties

The court next considers the "convenience of the parties as indicated by their relative physical and financial condition." 55 F.3d at 879. In assessing this factor, the court looks to: "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Smart Audio Techs.*, 2012 WL 5865742, at *7 (internal quotation omitted).

The defendants suggest that litigating in California is more convenient, as all of the defendants are based in the Northern District of California and none of the parties operate out of Delaware. (D.I. 50 at 10–11.) Should the action remain in this district, all of the parties, including Linex, would be required to travel. (*Id.*) Linex, on the other hand, argues that each of the defendants have substantial financial resources, making their added costs of litigating in Delaware insignificant. (D.I. 77 at 6.)

The court is not entirely convinced by the arguments of either side with regard to this factor. While the defendants may have sizable financial resources, those resources do not blind the court to the inevitable costs and disruptions that cross-country litigation imposes. On the other hand, while Linex might have to travel regardless of the court's decision, it is reasonable to

7

presume that transfer to California would increase its travel costs.[3] Unfortunately, the court cannot adequately assess the "relative ability of each party to bear these costs."[4] As such, the court is left simply with the knowledge that an adverse transfer decision would subject both sides to some degree of added inconvenience. Since there are five defendants that would be further burdened by an adverse decision and only one plaintiff, the court would ordinarily find that this factor weighs slightly in favor of transfer.

Linex also points out, however, that all the defendants but Apple are incorporated in Delaware and thus have submitted to suit in this district. (*Id.* at 5–6.) Indeed, a fellow Delaware district court has recognized that "a Delaware corporation must expect an uphill climb in proving that it is, in any meaningful sense, 'inconvenient' to defend its actions in the forum in which the corporation has freely chosen to create itself." *Intellectual Ventures I*, 842 F. Supp. 2d at 756; *see also AIP Acquisition*, 2012 WL 5199118, at *4 ("[T]he court finds it significant that [the defendant] is a Delaware corporation and has necessarily consented to suit in this jurisdiction.") Of course, not all the defendants have chosen to incorporate in Delaware, and the court is cognizant of *In re Link_A_Media*'s general warning to avoid weighing a defendant's state of incorporation too heavily in the transfer analysis. Nevertheless, the decisions of HP, Aruba, Meru, and Ruckus to incorporate in Delaware do suggest that the inconvenience of litigating here

---

[3] Though Linex does not identify its principal place of business, it does note that it operates out of four offices in Florida, New Jersey, Massachusetts, and Texas. (D.I. 77 at 7.) At least the three East Coast offices are significantly closer to this district than to California.

[4] While Linex does emphasize that it is a small company relative to the defendants, it provides the court with no specific information regarding its own financial resources. (D.I. 77 at 7.) The court is informed simply that Linex has only three principals and two part-time employees. (*Id.*) This fact, however, may actually cut in favor of transfer. Even assuming some financial resource disparity—and no direct evidence of such has been presented to the court—it might be easier for Linex to make its few employees available in California than it would for the five defendants to send all of their relevant employees to Delaware for trial and other proceedings.

is somewhat less than the court would ordinarily presume it to be.[5] As such, the court finds that this factor is neutral.

### e. Convenience of witnesses

The next *Jumara* factor is "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." 55 F.3d at 879. The defendants argue that no likely party or third-party witnesses reside in Delaware and that most actually reside in or near the Northern District of California. (D.I. 50 at 11–12.) They claim that "the primary witnesses who will be able to testify about the design, development and function of the components that primarily control the accused functionality in the . . . accused products . . . are employees of third parties that make and sell these components to the [d]efendants" and that these employees are located in California. (*Id.* at 12.) Linex responds that the location of party witnesses is immaterial and that the defendants have not sufficiently demonstrated that the relevant third-party witnesses will actually be unavailable to testify in Delaware. (D.I. 77 at 7–9.)

As an initial matter, Linex is correct that "[p]arty witnesses or witnesses who are employed by a party carry no weight in the "balance of convenience" analysis since each party is able, indeed, obligated to procure the attendance of its own employees for trial." *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998). Linex, however, overstates the

---

[5] Linex urges the court to focus even more intently on the defendants' states of incorporation in its transfer analysis. (D.I. 77 at 5–6.) Specifically, Linex cites *Intellectual Ventures I* for the proposition that "absent some showing of a unique or unexpected burden, a company should not be successful in arguing that litigation in its state of incorporation is inconvenient." 842 F. Supp. 2d at 756. The court does not understand *Intellectual Ventures I* to require a finding that this "convenience of the parties" factor weighs against transfer whenever a defendant is a Delaware corporation absent some sort of extraordinary circumstances. Indeed, the *Intellectual Ventures I* court itself found that this factor favored transfer, despite the fact that all the defendants in that case were incorporated in Delaware, where all the parties were headquartered in or close to the transferee forum. Here, the necessary "unexpected burden" results from Apple's lack of ties to Delaware and the fact that all of the defendants are headquartered in California.

9

defendants' burden of demonstrating that the third-party "witnesses may actually be unavailable for trial in one of the fora." Though it is true that none of the third-party component suppliers have explicitly stated that their employees will refuse to appear for trial in Delaware, the court does not require such a clear statement. It is enough that likely witnesses reside beyond the court's subpoena power and that there is reason to believe those witnesses will refuse to testify absent a subpoena. *See Smart Audio Techs.*, 2012 WL 5865742, at *8 ("[T]his factor is only given weight when there is some reason to believe that a witness actually will refuse to testify absent a subpoena."); *see also AIP Acquisition*, 2012 WL 5199118, at *4; *Acuity Brands, Inc. v. Cooper Indus., Inc.*, No. 07-444-GMS, 2008 WL 2977464, at *2 (D. Del. July 31, 2008). The sheer distance of these potential third-party witnesses from Delaware together with their declarations that testifying in this district would be more burdensome and the defendants' explanation of why their testimony will be required provides the court with adequate reason to believe that at least some likely witnesses might be unavailable in this forum. *Compare AIP Acquisition*, 2012 WL 5199118, at *4 (finding that potential for witness unavailability was sufficiently demonstrated by distance between likely witnesses and proposed transferee forum), *with Smart Audio Techs.*, 2012 WL 5865742, at *8 (noting that mere distance of former party employees from Delaware was insufficient to show potential for witness unavailability where the party also offered no explanation as to why their testimony would be necessary). The court finds that this factor weighs in favor of transfer.

### f. Location of books and records

Finally, the court accounts for "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara*, 55 F.3d at 879.

The defendants suggest that much of the evidence will be located in the Northern District of California due to their own physical presence in that district. (D.I. 50 at 12–13.) Additionally, the defendants emphasize the particular difficulties of transporting source code. (*Id.* at 13.) Linex suggests that the source code concerns are irrelevant to the weighing of this factor, as the parties can arrange to produce source code in a "mutually agreeable location." (D.I. 77 at 9–10.)

The defendants have the better argument on this point. The court recognizes that "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009); *see also Smart Audio Techs.*, 2012 WL 5865742, at *9. Since all the defendants are physically located in the Northern District of California, it is reasonable to presume that much of the evidence will be found there. Though modern technology makes the task of transporting electronic evidence far less onerous, the court must nevertheless accord at least some weight to this factor. *See In re Link_A_Media Devices Corp.*, 662 F.3d at 1224; *Smart Audio Techs.*, 2012 WL 5865742, at *9. As such, this factor weighs slightly in favor of transfer.[6]

1. Public interest factors

The parties limit their briefing on the public interest *Jumara* factors to "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara*, 55 F.3d at 879. The defendants contend that transferring this action to the district where much of the

---

[6] The defendants' source code concerns do not affect the weight the court gives this factor. The parties' briefing suggests that the third-party suppliers' source code might be inspected at secure facilities in or near California during discovery. (D.I. 50 at 13; D.I. 77 at 10.) The court, however, fails to see how its transfer decision will impact the actual cost of performing that inspection. Additionally, to the extent the source code may be necessary at trial and other in-court proceedings, the defendants offer no reason to believe that it will be significantly more difficult to transport the code from the secure facilities to this courthouse than from those facilities to a courthouse in the Northern District of California.

relevant evidence is located, where likely third-party witnesses reside, and where all the defendants are headquartered will help to avoid excessive litigation costs and unnecessary disruption of business operations. (D.I. 50 at 13–14.) Linex responds by pointing to its earlier arguments regarding each of the three related private interest factors. (D.I. 77 at 11.) For largely the same reasons that the court found the "location of relevant books and records" and "convenience of the witnesses" factors to weigh in favor of transfer, the court agrees with the defendants again and believes that this "practical considerations" public interest factor also counsels transfer.

An examination of the parties' potential litigation costs presents one small wrinkle. The court previously found that the "convenience of the parties" private interest factor was neutral, relying heavily on the fact that four of the defendants are Delaware corporations and generally should not be heard to argue that this is an inconvenient forum. The court, however, viewing the same underlying facts in its assessment of this "practical considerations" factor, believes they do recommend transfer. As a matter of form, the fact that all the defendants but Apple are incorporated in Delaware did affect the private interest, party convenience analysis. The public interest factor at issue here, however, calls for the court to examine *practical* considerations rather than ones of form, and there is little reason to believe a California-based firm actually reduces its costs of litigating in this district merely by incorporating in Delaware. Put simply, the concern that prevented the court from concluding that the "convenience of the parties" factor favored transfer is inapplicable here, and the court believes that the parties' aggregate litigation costs will be reduced by litigating in California. For this additional reason, the court finds the "practical considerations" factor weighs in favor of transfer.

C. Transfer Analysis Summary

Considering the *Jumara* factors as a whole, the court believes the defendants have met their burden of demonstrating that the interests of justice and convenience strongly favor transfer. Only Linex's forum preference weighs against transfer, and that preference does not warrant maximum deference in this case. On the other hand, several factors counsel transfer: the defendants' forum choice, where the claims arose, the convenience of potential witnesses, the location of relevant books and records, and practical considerations that might make trial easy or inexpensive.

V. **CONCLUSION**

For the reasons discussed above, the court will grant the defendants' joint motion to transfer this action to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

Dated: January 7, 2013

CHIEF, UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LINEX TECHNOLOGIES, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v.  ) <br> ) <br> HEWLETT-PACKARD COMPANY, APPLE ) <br> COMPUTER INC., ARUBA NETWORKS, INC., ) <br> MERU NETWORKS, INC., and RUCKUS ) <br> WIRELESS, ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. 11-400-GMS |

## ORDER

At Wilmington this 7th day of January 2013, consistent with the memorandum opinion issued this same date, IT IS HEREBY ORDERED THAT:

The defendants' Motion to Transfer (D.I. 49) be GRANTED.

_____
CHIEF, UNITED STATES DISTRICT JUDGE